Argued November 6, reargued December 9, 1964, reversed and
remanded April 2, 1965

## BEELER *v.* COLLIER

400 P. 2d 547

*Norman K. Winslow,* Salem, argued the cause for
appellant. With him on the brief were Paul Burris
and Howard Kaffun, Salem.

*Bruce W. Williams,* Salem, argued the cause for
respondent. With him on the brief were Williams and
Skopil and Al J. Laue, Salem.

142

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell, Goodwin, Denecke and Lusk, Justices.

DENECKE, J.

Plaintiff driver was injured in an intersection collision with defendant driver. The case is troublesome because plaintiff developed retrograde amnesia and cannot remember anything occurring at the time of, or immediately before, the impact. The testimony of defendant, the only eyewitness, is that plaintiff overtook him and hit him as he was turning. Defendant's motion for a directed verdict was granted. Plaintiff appeals.

The evidence most favorable to plaintiff is as follows: Plaintiff left Stayton, Oregon, about noon. He deposited passengers at two places. The collision occurred at about 12:10, while he was on his way home. He had traveled about 15 miles from Stayton to the scene of the collision. Plaintiff turned onto MR 3 about two miles from the scene of the collision. His last recollection is driving south on MR 3, one-quarter to three-quarters miles north of the intersection. According to a map which was an exhibit, the first intersection of MR 3 north of the scene of the collision is about a mile from such scene.

Defendant testified that he was driving west on CR 937. About 25 to 50 feet east of the intersection of CR 937 and MR 3 there is a sign ordering cars driving west on CR 937 to yield the right of way. The placing of the sign was duly authorized by Marion county.

There were 28-foot skid marks commencing just

east of the intersection in the lane in which defendant was traveling, turning southwest and ending at some gouge marks, debris, and dirt, in the middle of the southwest quadrant of the intersection. There were no skid marks in the west or southbound lane of MR 3. Plaintiff's green vehicle was hit at the left front door. Green paint was found on the front bumper of defendant's pickup, which was turned over and damaged on the right front bumper and fender.

■ Defendant successfully argued to the trial court that a finding that plaintiff entered the intersection going southward on MR 3 would be based upon pure speculation. Such a finding would, in this case, have to be based upon circumstantial evidence; however, that is permissible. We have frequently quoted Prosser regarding the kind of circumstantial evidence that is necessary to raise a decision based upon sheer speculation to one based upon a reasonable inference:

"'* * * What is required is evidence from which reasonable men may conclude that, upon the whole, it is more likely that there was negligence than that there was not. Where the conclusion is a matter of mere speculation or conjecture, or where the probabilities are at best evenly balanced between negligence and its absence, it becomes the duty of the court to direct the jury that the burden of proof has not been sustained.'" Prosser, Law of Torts (2d ed), 200, § 42, as quoted in *Eitel v. Times, Inc.*, 221 Or 585, 592, 352 P2d 485 (1960).

The quotation is directed to decisions on negligence, but it is as applicable to the proof of any fact, such as, from whence did plaintiff come? In *Cowgill, Adm'r v. Boock, Adm'r*, 189 Or 282, 290, 218 P2d 445, 19 ALR2d 405 (1950), we held the jury could reasonably infer from the circumsantial evidence of the position of the bodies that the father was driving the car.

In this case the only way to get to plaintiff's home, his stated destination (without turning around and heading north again), from the last place that he remembers driving, was to go through this intersection, entering from the north. The skid marks commencing in defendant's lane and ending in the southbound lane of MR 3 and the dirt and debris in such lane indicate that plaintiff was in the southbound lane at the time of collision. The absence of any skid marks connected with plaintiff's vehicle indicates that he did not abruptly go into that lane. The skid marks, the apparent primary impact on the left front side of plaintiff's vehicle and the green paint on defendant's front bumper indicate that at the time of the collision plaintiff was traveling south.

■ The evidence was sufficient for a jury to "conclude that, upon the whole, it is more likely that * * * [plaintiff was driving south on MR 3] than that * * * [he] was not." Prosser, Law of Torts, supra. Therefore, whether plaintiff entered the intersection on MR 3 from the north was a proper question for the jury.

Defendant also successfully argued to the trial court that even if it were assumed that plaintiff entered the intersection on MR 3 from the north, there was no proof that defendant was negligent. Among other specifications, plaintiff charged defendant with failure to keep a lookout, and failure to yield the right of way. ORS 483.202 requires defendant to look out for and yield the right of way to vehicles simultaneously approaching from the right.

■ Defendant testified that he could see two miles to the north, his right, on MR 3, that he looked, and that he saw no cars. He testified that he gave an electric signal indicating a turn to the right on MR 3;

about this time he noticed plaintiff at his rear, and then he was hit on his right side; he assumes plaintiff's vehicle struck him.

We have concluded that the jury could have found that plaintiff's vehicle was approaching from the north on MR 3. If so, the jury could also find that defendant, by his own testimony, failed to see plaintiff approaching from the right and failed to yield the right of way. We conclude, therefore, that there was evidence from which the jury could reasonably find that defendant was negligent in failing to keep a lookout. The directed verdict should not have been granted.

Reversed and remanded.